Joseph A. Kevins,
Acting Surrogate:
“ Woe to you scribes and Pharisees, hypocrites, because you devour the houses of widows, praying long prayers. For this you shall receive the greater judgment.”
(Matthew, 23, 14.)
The State of New York is claiming to share with his widow the estate of its deceased servant because it covered him with ben efitLESS workmen’s compensation.
*125 Clarence Frank was an employee of the Department of Audit and Control and a member of the New York State Betirement System at the time of his death on December 31, 1953. He was survived by a widow and two adult sons. The widow applied to the Betirement System for the accidental death benefit and the Comptroller determined that Mr. Frank was engaged in the employment of the State at the time of his death, and the State Betirement Board granted the widow a pension of $228 per month, which was an increased amount because Frank was killed while performing services for the State. A jury verdict of $25,000 was rendered on a death action against a third party. This amount was paid to the administrator. There remains of this sum to be distributed $14,545.60.
To this point, the law is clear. The widow would be entitled to her pension and the heirs share in the recovery against the third party according to their financial interest. However, the State of New York decided to cover its employees with workmen’s compensation. A sum is appropriated by the Legislature and paid to the State Insurance Fund in advance and the difference between this sum and the actual losses plus the fixed charges for a given year are appropriated from State funds for the ensuing year and paid to the State Insurance Fund.
Without a claim being filed, the Workmen’s Compensation Board decided that the widow was entitled to a compensation benefit of $21 per week. As a result, the pension of the widow was reduced by an equal amount to $137 per month, a reduction of $91 per month.
If this were all that happened, the widow would still be receiving all she was entitled to in money, but, pursuant to section 29 of the Workmen’s Compensation Law, the compensation carrier, in this case the State Fund, claims a lien for all payments of compensation and is claiming to be entitled to reimbursement from the recovery against the third party. This has the direct effect therefore of reducing, by the amount of the compensation award to the widow, the amount of money which she receives. The Workmen’s Compensation Law instead of being benign to her is malignant. Her loss and the State’s gain is measured by the award made to her for weekly compensation benefits. She ' received the award but has to pay the award to the State.
The Legislature of the State of New York when they covered the employees of the State with workmen’s compensation could never have intended that the employees should pay the State the amount of the award that was made for benefits to them. They certainly intended that the employees should receive all benefits and should have to pay none to the State.
*126 Where then does the evil lie, that all these statutes, good in themselves, should work such a hardship?
In order to straighten this muddle out, it is necessary to go to the primary law of the land. This result has been obtained through such obscure financial legerdemain that it reminds me of the typical shell game. Now you see it, and now you don’t, and it is nearly as difficult to expose.
First of all, the primary law of our land provides:
“ [Membership in retirement systems; benefits not to be diminished nor impaired.]
“ § 7. After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” (N. Y. Const., art. V, § 7. Adopted by Constitutional Convention of 1938; approved by the People Nov. 8, 1938.)
This article of the Constitution makes the provisions of the Civil Service Law an effective contract independent and inviolate, as secure as if the agreement had been made by the State employee and an independent insurance company, and the premium for the benefits to the employee paid by the State of New York.
The scope of this opinion is limited to the rights of members of the State Eetirement System.
We know the Constitution forbids diminishing or impairing the pension. We know that the pension has been diminished and impaired. We know that the widow will receive less than she would otherwise be entitled to because of the Workmen’s Compensation Law, so we turn to this to see if it violates section 7 of article V of the Constitution of the State.
There is no need to identify the State Insurance Fund with the State. It is the actual money that needs to be identified. Can the State of New York enrich itself $91 per month by reducing the pension of this widow contrary to the Constitution? The answer to this is “ No ”. Can the State of New York get around the Constitution by covering its employees with workmen’s compensation, and thereby obtaining the benefits of section 29 of the Workmen’s Compensation Law, and be permitted to enrich itself from the estate of the deceased employee by reducing the pension the amount of the compensation, and then collecting the full amount of the compensation from the estate of the employee ? The answer to this should be “ No ”. This is mere evasion of the Constitution of the State.
How does the State get the money, and thereby diminish and impair the pension of the emplovee? First of all, the pension *127 paid to the widow is actually reduced by $91 per month, the amount of the award in workmen’s compensation. This would be all right if the award in compensation could be retained by the widow. Section 29 of the Workmen’s Compensation Law authorizes recovery by the insurance carrier of the award out of the widow’s share of the payment for the death of the employee. How then does the $91 per month get into the State’s pocket? The State, different from any other employer, pays the State Fund the exact amount of its cost in each case. The cost in the Frank case is $21 per week or $91 per month. If the State Fund should be permitted, in this proceeding, to recover from the estate of the deceased employee the amount of the award, the net cost of operating the State Fund is reduced $91. Since the $91 per month recovery equals the $91 per month expense the cost net to the State Fund is zero. The cost to the State Fund being zero, the premium to the State of New York for the insurance would be zero. The State keeps for itself the amount it diminished the widow’s pension.
Nothing can be more direct or certain, that regardless of good intentions and high purpose, the State would be enriched at the widow’s expense under a law that was for her benefit; and the Constitution has been violated because the State has effectively, for its own profit, diminished and impaired the pension that a member of the Retirement System beneficiaries were entitled to.
The law should be vindicated. Nothing holds law up to greater scorn and ridicule than to permit the lash to be laid on a widow in the guise of a legal benefit.
Where is the evil? What should be straightened out by the court? The answer is simple here. The State Insurance Fund is not a proper party to this proceeding because if it enforces the lien which it claims it is entitled to, it would be for the purpose of reducing the pension by the exact amount. The State would be relieved from paying for its insurance coverage the exact amount it deducted from the pension. The Constitution prohibits this.
Each occasion the Legislature appropriates money for continuing workmen’s compensation is a completely new and independent decision to accept the benefits of section 29 of the Workmen’s Compensation Law, and, therefore, is an act of the Legislature subsequent to July 1, 1940 impairing a pension and is unconstitutional to the extent that the State Fund is not a proper party to this proceeding.
Since the act of the Legislature invoking section 29 of the Workmen’s Compensation Law, in this instance, is unconstitutional, the filing by the State Fund of the claim in the Surro *128 gate’s Court is unconstitutional and violates section 7 of article Y of the Constitution and shall not be permitted or allowed.
A decree may be prepared in accordance with this opinion.
Appendix
The administrator in this case made an application to the court to distribute a recovery in an action for the wrongful death of the decedent among those persons who suffered pecuniary injuries. The State Insurance Fund was cited in this proceeding, and did not appear by counsel upon the argument of the motion but appealed the order entered to the Appellate Division, Fourth Department.
The Appellate Division, Fourth Department, reversed the order with an opinion (286 App. Div. 986) that pointed out that the Acting Surrogate did not consider all the relevant evidence necessary to determine how the recovery should be distributed to the widow and next of kin “ in proportion to the pecuniary injuries suffered ”, and sent the matter back to this Acting Surrogate for further proceedings in accordance with the opinion. Upon the return date of a citation for such further proceeding, the petitioner-administrator moved to exclude the State Insurance Fund from this proceeding on the grounds that it had no right to be heard in the proceeding, and that its appearance was in violation of section 7 of article Y of the Constitution. This was the first time such a question was presented and the Acting Surrogate decided to dispose of this point before going further with the proceeding in accordance with the opinion of the Appellate Division. The counsel for all parties were notified that the court would decide the motion to exclude the State Insurance Fund, and consider on the motion only the constitutional question involved.
It is this court’s humble opinion that this procedure no way involved or is in any way violative of the order of the Appellate Division.
A constitutional question as to the jurisdiction of a court or the right of a party to appear in court may be raised at any stage of the proceeding and should be promptly decided.
Counsel for both sides were advised to seek the assistance of the Attorney-General of the State in this matter if they were so inclined. Neither were.
General counsel for the State Insurance Fund ignored the constitutional point in his brief.